667 So.2d 387 (1995)
Dewey B. McKinney, Appellant,
v.
Betty CASTOR, As Commissioner of Education, Appellee.
No. 93-3858.
District Court of Appeal of Florida, First District.
December 4, 1995.
Terence M. Brown of Brown & Christopher, Starke, for Appellant.
Robert J. Boyd and Ronald G. Stowers, Tallahassee, for Appellee.
*388 ZEHMER, Chief Judge.
Dewey B. McKinney, an administrator and former principal with the Bradford County School Board for the past 20 years, appeals a final order of the Education Practices Commission suspending his teaching certificate, permanently restricting him from occupying any position as a "building-level administrator," and placing him on a 3-year probationary period beginning on the date of his reemployment as an educator. McKinney argues, among other things, that the Commission erred by adjudging him guilty of the charges on less than competent and substantial evidence. We agree and reverse.
The final order approved in significant part the hearing officer's findings of fact and adopted his conclusion that McKinney was guilty of misconduct under the following charges:
(1) Failure to secure student medications in violation of subsections 231.28(1)(h) and 232.46(1)(b), Florida Statutes, and Bradford County School Board Rule 7.412, and to make reasonable effort to protect students from harmful conditions in violation of Department of Education Rule 6B-1.006(3)(a), Florida Administrative Code;
(2) Solicitation of controlled substances from two employees amounting to gross immorality as defined in rule 6B-4.009(2), in violation of subsection 231.28(1)(c), Florida Statutes, which conduct seriously reduced McKinney's effectiveness as an employee of the school board in violation of subsection 231.28(1)(f); and
(3) Solicitation of controlled substances and directing an employee to purchase medication for McKinney's personal use, which conduct violated rule 6B-1.006(4)(c), prohibiting one holding a valid Florida teacher's certificate from using institutional privileges for personal gain or advantage.
The proceeding before the Commission, which involved the potential revocation of McKinney's license, was penal in nature. The Commission was required to prove the charges by clear and convincing evidence. Ferris v. Turlington, 510 So.2d 292 (Fla. 1987). The applicable standard of appellate review is set forth in section 120.68(10), Florida Statutes (1993):
If the agency's action depends on any fact found by the agency in a proceeding meeting the requirements of s. 120.57, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by competent substantial evidence in the record.
Applying this standard, we conclude that the evidence is legally insufficient to support the above charges.
First, the record lacks competent, substantial evidence to support the charge of failing to secure student medications and failing to make reasonable effort to protect students from harmful conditions. Subsection 232.46(1)(b) requires district school boards to adopt rules governing the administration by school personnel of student medications and to include in its policies and procedures a rule providing that "[w]hen the medication is not in use, it shall be stored in its original container in a secure fashion under lock and key in a location designated by the principal." In compliance with subsection 232.46(1)(b), the Bradford County School Board adopted rule 7.412 requiring that student medications be kept under lock and key.
The evidence established that prior to McKinney's employment as principal of Starke Elementary School, student medications at the school historically had been stored on a shelf in the vault located in the school's administrative offices. The vault was left open during the school day and also housed school supplies. The practice of keeping student medications in the school vault was continued by McKinney after he became principal.
Three employees were designated by McKinney to administer the medications to the students. One of the medications commonly dispensed was Ritalin, a medication taken by children for attention deficit disorder. When several parents began noticing *389 that their children's supplies of Ritalin were being depleted too quickly or had been tampered with, McKinney instructed one of his employees to purchase a lock box with two keys in which to store the medications. Although finding that the evidence failed to prove that McKinney tampered with the Ritalin, the hearing officer did find that McKinney had not taken adequate precautions to secure student medications by leaving the vault open and accessible to all employees and faculty. Yet, there is no suggestion in the record that the school vault did not meet the technical requirements of the statute and board rule. In fact, the only evidence presented on this point was the testimony of a former principal at Starke Elementary who admitted that he had kept the student medications in the same manner and was of the opinion that the keeping of student medications in the school vault (even if open during the school day) complied with both the statute and administrative rules on securing student medications. Further, while there was evidence that the vault was open during the day, there was no evidence that the vault was left unsupervised at any time.
Whether a particular action constitutes a violation of a rule in this situation "is a factual question to be decided in the context of the alleged violation." Langston v. Jamerson, 653 So.2d 489, 491 (Fla. 1st DCA 1995), citing to Forehand v. School Board of Gulf County, 600 So.2d 1187 (Fla. 1st DCA 1992) (court engaged in factual analysis regarding circumstances and manner in which teacher used alleged profane language). Given the historic use of the vault to keep medications, we conclude there was no record evidence to legally support the ultimate finding of fact that McKinney's conduct in keeping the student medications in the school vault failed to meet the requirement that medications be kept under lock and key, or that he did not make a reasonable effort to protect the student population from conditions that might be harmful to its health and safety.[1]
Likewise, the record lacks competent and substantial evidence to support the charge that McKinney's conduct in soliciting medication from two employees amounted to gross immorality and conduct impairing his effectiveness in violation of subsections 231.28(1)(c) and (1)(f). The evidence adduced to support these charges showed that on two isolated occasions in 1989 and 1991, McKinney requested from two separate employees a couple of their prescription pain pills to alleviate the pain he was suffering from severe migraine headaches. The hearing officer found that McKinney's actions in soliciting the controlled substances (Tylenol III and hydrocodone) constituted gross immorality and conduct that seriously reduced McKinney's effectiveness as an employee of the school board.
The term "immorality" is defined in rule 6B-4.009(2), Florida Administrative Code, which states:
(2) Immorality is defined as conduct that is inconsistent with the standards of public conscience and good morals. It is conduct sufficiently notorious to bring the individual concerned or the education profession into public disgrace or disrespect and impair the individual's service in the community.
In the present case, there was a dearth of record evidence to support a finding that McKinney's conduct of soliciting the medication twice in two years was "sufficiently notorious" to bring McKinney and the education profession "into public disgrace or disrespect and impair [McKinney's] service in the community," or that McKinney's conduct seriously reduced his effectiveness as an employee of the school board. Apart from conclusory statements made by the school board superintendent who filed the original charges against McKinney, there was no clear and convincing evidence presented by the Department of Education or the Bradford County School Board suggesting that the request McKinney made to his employees impaired his effectiveness as a school board employee. In contrast, there were numerous *390 witnesses who offered unrebutted testimony that McKinney's effectiveness remained intact.
Finally, the evidence was legally insufficient to support a finding of guilt on the last charge alleging that McKinney's solicitation of the pain medication and his request of an employee to purchase Donagel PG for him at a local drug store violated rule 6B-1.006(4)(c). Rule 6B-1.006(4)(c) prohibits an individual holding a Florida educator's certificate from "using institutional privileges for personal gain or advantage." There is no showing that McKinney used his position to get these employees to give him some of their pain medication or to pick up medication for him. The employees did testify that they felt somewhat uncomfortable in complying with his requests, but when they ultimately informed McKinney that they would not comply with his further requests, there was no evidence of retribution on McKinney's part; indeed, their testimony establishes that McKinney accepted their decision not to comply with no showing of displeasure.
For the reasons stated above, we hold that the findings adopted in the final order are not supported by competent and substantial evidence. Accordingly, the appealed order is reversed and the cause is remanded with instructions that the charges be dismissed.
REVERSED and REMANDED.
DAVIS, J., and WENTWORTH, Senior Judge, concur.
NOTES
[1] We would also point out that the duty created by subsection 232.46(1)(b) to promulgate rules to secure student medications is imposed on the district school boards and has no bearing on McKinney's alleged conduct in the instant matter.