984 So.2d 548 (2008)
James Peter LaMORTE, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-4346.
District Court of Appeal of Florida, Second District.
May 2, 2008.
Rehearing Denied July 1, 2008.
*549 Martin J. Hernandez, Tampa, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Diana K. Bock, Assistant Attorney General, Tampa, for Appellee.
SALCINES, Judge.
James Peter LaMorte entered no contest pleas in two separate informations involving sexual offenses against two children. LaMorte reserved his right to appeal the denial of his motions to dismiss based on the statute of limitations. We affirm.

The Charges
On February 16, 2005, LaMorte resigned from his position as a high school teacher and swim team coach with the Sarasota County School System. Thereafter, on June 8, 2005, LaMorte was charged with sexual offenses against two children, identified hereinafter as D.P. and W.K. Both children were students at Venice High School, and D.P. also was a member of the swim team.
LaMorte entered a plea of no contest in case 05-CF-10351 to the first-degree felony offense of sexual battery by a person in custodial authority in violation of section 794.011(4)(e), Florida Statutes (1981-1983), for acts committed upon D.P., a child over the age of eleven years but less than eighteen, between August 1, 1981, and February 18, 1984.[1] LaMorte also entered a plea of no contest in case 05-CF-10352 to the second-degree felony offense of attempted sexual activity with a child by a person in custodial authority in violation of sections 794.041, Florida Statutes (Supp. 1990-1991), for acts committed upon W.K., a child twelve years or older but less than eighteen, between September 2, 1990, and June 30, 1992. He also entered a similar plea to the second-degree felony offense of *550 lewd, lascivious, or indecent act upon or in the presence of a child under sixteen years of age in violation of section 800.04, Florida Statutes (Supp.1990-1991), for acts committed upon W.K. during that same time period. All of these offenses were committed while LaMorte was a coach and teacher at Venice High School.
The informations to which LaMorte entered the pleas specifically charged that during the pertinent time periods LaMorte "while being a public employee" did "engage in misconduct in office" by committing enumerated sexual offenses upon these students at a time when LaMorte was in a position of custodial or official authority to coerce each child to submit to him. The informations alleged the misconduct was related to school activities and/or swim team activities and/or LaMorte's position as a teacher and/or coach at Venice High School.

The Motions to Dismiss
Before LaMorte entered into the plea agreements, he filed motions to dismiss the charges in both cases. He argued in pertinent part that the prosecutions were barred by the statute of limitations and that section 775.15(3)(b), Florida Statutes (1981-1983, Supp. 1990-1991),[2] which extends the statute of limitations for misconduct in office by a public employee, is unconstitutionally vague.
A hearing was conducted to consider LaMorte's motions to dismiss. The motions were denied. When LaMorte entered into the plea agreements, he reserved his right to appeal the denial of his motions to dismiss. LaMorte was convicted of the first-degree and second-degree felonies in accordance with his plea.

Statute of Limitations
Prosecution for a first-degree felony must be commenced within a four-year period. § 775.15(2)(a), Fla. Stat. (1981-1983). Prosecution for a second-degree felony must be commenced within three years. § 775.15(2)(b), Fla. Stat. (Supp. 1990-1991). However, an extension of these statutes of limitations is found in section 775.15(3)(b) which states:
(b) Any offense based upon misconduct in office by a public officer or employee at any time when the defendant is in public office or employment, within 2 years from the time he or she leaves public office or employment, or during any time permitted by any other part of this section, whichever time is greater.
LaMorte argues that the legislature did not intend for the statutory extension of the limitations period supplied by section 775.15(3)(b) to apply to his actions while he was employed as a public school teacher. He bases this argument on the statutory language: "Any offense based upon misconduct in office by a public officer or employee. . . ." (Emphasis supplied.) LaMorte argues that the statute only applies to persons who hold public office. The trial court rejected LaMorte's argument. We also find LaMorte's argument not to be persuasive.

*551 Statutory History

Section 775.15(b)(3) was the product of a revision in the laws in 1974. Ch. 74-383, § 10, Laws of Fla. In formulating the statute, the legislature substantially rewrote section 932.465, Florida Statutes (1973), and renumbered it to become section 775.15. Prior to renumbering and amendment, the 1973 version of section 932.465(3) provided:
(3) Offenses by state, county, or municipal officials committed during their terms of office and connected with the duties of their office shall be commenced within two years after the officer retires from the office.
The amendment specifically edited the statute to eliminate the reference to "offenses" committed during the officials' "terms of office" which were "connected with the duties of their office." Instead, the amended statute used the words "misconduct in office" and added the public "employee" to the list of persons included in the extension of the limitations period.
We conclude that the legislature's act of rewriting the statute clearly indicates that it did not intend to restrict the extension of the limitations period only to those individuals who hold public office. The legislature specifically included the word "employee" and referenced that employee's "employment." LaMorte's argument that the statute only applies to public officer holders is without merit.

Statutory Construction
This is a case of first impression in Florida with regard to the use of section 775.15(3)(b) to extend the statute of limitations for prosecution of a public school teacher.[3] Chapter 775 is entitled "Definitions; *552 General Penalties; Registration of Criminals." However, the statute does not define "public officer or employee" or "misconduct in office." LaMorte claims that because there are no definitions for these terms, the statute is unconstitutionally vague. We disagree.
"When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Hess v. Walton, 898 So.2d 1046, 1049 (Fla. 2d DCA 2005) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)). We conclude that the term "public officer or employee" is clear on its face and needs no definition.
Although we also conclude that the meaning of "misconduct in office" is not ambiguous, it is a well-settled rule of statutory construction that in the absence of a statutory definition, courts can resort to definitions of the same term found in case law. See Crist v. Jaber, 908 So.2d 426, 432 (Fla.2005); Rollins v. Pizzarelli, 761 So.2d 294, 298 (Fla.2000).
"Misconduct in office" by public school teachers is defined in rule 6B-4.009(3), Florida Administrative Code, governing the Department of Education:
6B-4.009. Criteria for Suspension and Dismissal.
The basis for charges upon which dismissal action against instructional personnel may be pursued are set forth in Section 231.36, Florida Statutes [now section 1012.33, Florida Statutes (2005)]. The basis for each of such charges is hereby defined:
. . . .
(3) Misconduct in office is defined as a violation of the Code of Ethics of the Education Profession as adopted in Rule 6B-1.001, FAC., and the Principles of Professional Conduct for the Education Profession in Florida as adopted in Rule 6B-1.006, FAC., which is so serious as to impair the individual's effectiveness in the school system.
This rule is discussed in Walker v. Highlands County School Board, 752 So.2d 127 (Fla. 2d DCA 2000); Purvis v. Marion County School Board, 766 So.2d 492 (Fla. 5th DCA 2000); Roberts v. Castor, 629 So.2d 311 (Fla. 1st DCA 1993); and MacMillan v. Nassau County School Board, 629 So.2d 226, 227, 230 (Fla. 1st DCA 1993) (discussing how rule 6B-4.009(3) defines misconduct in office as a violation of the Code of Ethics and the Principles of Professional Conduct "which is so serious as to impair the individual's effectiveness in the school system"). We do not agree that it is necessary to resort to relying on these cases for a definition of the term "misconduct in office" and hold that LaMorte's argument that the statute is unconstitutionally *553 vague is without merit.[4] Accordingly, we affirm the convictions and sentences imposed.
Affirmed.
VILLANTI, J., Concurs specially.
ALTENBERND, J., Dissents with opinion.
VILLANTI, Judge, Specially concurring.
I concur in the majority opinion in this case because I believe that it is the result required by the plain language of section 775.15(3)(b), which clearly and unambiguously makes its provisions applicable to public employees. LaMorte's argument is essentially that the statute does not mean what it says. However, the plain meaning of a statute controls unless this leads to an unreasonable result or a result contrary to legislative intent. Cherry v. State, 959 So.2d 702, 713 (Fla.2007); Daniels v. Fla. Dep't of Health, 898 So.2d 61, 64 (Fla. 2005).
Further, while I share Judge Altenbernd's concerns about the ramifications of this statute, I believe that these concerns must be addressed by the legislature rather than this court. In State v. Bruno, 107 So.2d 9, 13 (Fla.1958), the defendant challenged the constitutionality of the predecessor statute to section 775.15(3)(b), arguing that its plain meaning was unreasonable because it "could mean that one who held public office for forty years could be charged almost forty two years later for an offense committed in the first year of his tenure." In rejecting this argument, the supreme court stated, "It being clear that the Legislature had the right to enact the statute, we will not concern ourselves with its wisdom in doing so." Id.
Accordingly, I concur in the majority opinion and leave it to the legislature to address the perceived inequities identified in the dissent.
ALTENBERND, Judge, Dissenting.
The majority's opinion is not illogical, and I would certainly have no objection to a longer statute of limitations applicable to all perpetrators of this particular crime. Nevertheless, "misconduct in office" is not defined in this criminal statute, and I conclude that all ambiguities concerning this statute must be interpreted in favor of the defendant. See State v. Watkins, 685 So.2d 1322, 1323 (Fla. 2d DCA 1996); § 775.021(1), Fla. Stat. (1981-2007). Absent a definition in the criminal code, I would limit this special statute of limitations to persons who commit crimes based upon misconduct in a position that is defined as an "office" either in the Florida Constitution or in the Florida Statutes.
The majority is holding that all state employees whose employment is governed by an employment agreement that allows the employer to terminate or reprimand them for "misconduct in office" as a matter of civil employment law are subject to a special statute of limitations for criminal offenses committed in connection with that *554 employment. I frankly do not know how many government jobs in Florida have conduct codes that allow for discipline based on the civilian equivalent of conduct unbecoming an officer. It troubles me, however, that we would authorize a major extension of the period in which to commence a criminal proceeding based on such a provision.
School teachers do not hold any "office" defined in the constitution or the statutes. See § 1.01(6), Fla. Stat. (2007) (requiring statutes referencing "office" or "officer" to be construed as including any person authorized by law to perform the duties of such office). Chapter 1012 specifically defines school officers separately from instructional personnel. § 1012.01(1), (2), Fla. Stat. (2007) (originally enacted as § 228.041(8), (9), Fla. Stat. (1981), repealed by and renumbered by ch. 2002-387, § 1058, Laws of Fla.). For the period relevant to this case, teachers in Florida were issued "certificates" and categorized as "personnel." See § 1012.55 (originally enacted as § 231.15, Fla. Stat. (1981), repealed by and renumbered by ch. 2002-387, § 1058, Laws of Fla.). They did not take the oath of office required of public officers. Art. II, § 5(b), Fla. Const.
I recognize that the amendment discussed in the majority's opinion eliminated the language "terms of office" and added "employee." The legislative history does not provide an explanation for these changes. I cannot agree that an undefined reference to "misconduct in office" puts public employees on notice of the extended statute of limitations applicable to them if they are subject to a "conduct in office" requirement in the conditions of their employment.
There are individuals who are both full-time employees and officers of the state. I am one of those persons, as are all other judges in active service. The members of the legislature presumably are officers of Florida and statutorily paid a salary, but I doubt that they are "employees" for purposes of this statute. See § 11.13, Fla. Stat. (2007). As interpreted by the majority, I assume, but am not certain, that all law enforcement officers are subject to this longer statute of limitations.
I am troubled by the disparity created by the majority's holding between the treatment of state employees and the treatment of private employees. For example, a private school teacher who steals a $500 piece of equipment is subject to a three-year statute of limitations, see § 775.15(2)(b), Fla. Stat. (2007), while a public school teacher, or perhaps even a janitor, who commits the same act is subject to a statute of limitations that may not expire for thirty years. See § 775.15(12)(b). The teacher involved in this case has a limitations period in excess of twenty years for offenses that would have been barred after three years if he worked for a church or private school. I am not arguing that this statute of limitations violates equal protection; I simply believe this incongruity demonstrates the ambiguity that should require this court to narrowly construe this special statute of limitations.
NOTES
[1] LaMorte also had been charged in case 05-CF-10351 with lewd, lascivious, or indecent act upon or in the presence of D.P., a child under fourteen years of age in violation of section 800.04, Florida Statutes (1979-1983). However, the State later dismissed this charge.
[2] In 1981 through 1983 and 1990 through 1991, section 775.15(3)(b) was the applicable subsection for extending the statute of limitations for misconduct in office by a public employee. The subsection is now located at section 775.15(12)(b). The wording of the subsection has not changed over the years. In criminal cases, the applicable statute of limitations is that which is in effect at the time of the offense giving rise to the criminal charges. State v. Perez, 952 So.2d 611 (Fla. 2d DCA 2007); see Rubin v. State, 390 So.2d 322, 323-24 (Fla. 1980). LaMorte cites to section 775.15(12)(b) throughout his argument. In this opinion, citations to the statute shall be to the subsection in effect at the time the offenses were committed, section 775.15(3)(b).
[3] We note that Ohio has a similar statute. However, two Ohio appellate courts reached opposite results when considering the extension of the limitations period in actions against educators. Section 2901.13(C), Ohio Revised Code, states:

If the period of limitations . . . of this section has expired, prosecution shall be commenced for an offense involving misconduct in office by a public servant as defined in 2921.01 of the Ohio Revised Code, at any time while the accused remains a public servant or within two years thereafter.
(Emphasis added.) The Ohio Revised Code defines a "public servant" to include "an employee or agent of the state or any political subdivision." State v. Heebsh, 85 Ohio App.3d 551, 620 N.E.2d 859, 860 (1992). The Ohio Third District Court found that the statute applied to Heebsh, who was an elementary school teacher and high school tennis coach, who had sexual contact with a child approximately 100 times while on the premises of the high school and after tennis matches. The Third District concluded that Heebsh's "sexual conduct with [the child] is not behavior conforming to prevailing standards or laws, it constitutes misconduct in office by a public servant." Id. at 861.
A few years later the Ohio First District Court reached a different result when it analyzed this same statute. In State v. Sakr, 101 Ohio App.3d 334, 655 N.E.2d 760 (1995), a university professor was indicted for sexual offenses and kidnapping that had been committed against one of the professor's students while he was a member of her thesis committee. Sakr used his status to try to coerce the student to have sex with him. The appellate court held that Sakr was a public servant but concluded that he was not guilty of "misconduct in office." The court stated:
We believe that by employing the term "misconduct in office," the legislature intended that, in order for the statute of limitations to be tolled, either the offense must involve such a palpable nexus between the auspices of the office and the wrongdoing that it constitutes an offense against justice and public administration as codified in R.C. Chapter 2921, or, alternatively, the wrongdoer must have misused his or her public office effectively to conceal the wrongdoing and thus thwart timely prosecution.
Id. at 762 (emphasis added). In its explanation of its ruling, the First District concluded that the definition of public servant should not be read separately from the code section in which it appears. The Ohio statute specifically extended the statute of limitations for an "offense involving misconduct in office by a public servant as defined in (section) 2921.01 of the Ohio Revised Code." See Heebsh, 85 Ohio App.3d at 554, 620 N.E.2d 859 (emphasis added). The First District noted that chapter 2921 is entitled "Offenses Against Justice and Public Administration." The crimes in the chapter included bribery and intimidation, perjury, compounding a crime, obstructing justice or official business, theft in office, and soliciting or receiving improper compensation. Id. at 762. The offenses allegedly committed by Sakr were not included in that list, and the First District held that the prosecution for those offenses was barred by the statute of limitations.
We conclude that the Sakr opinion is not persuasive because the Florida statute does not reference any statute to define the term "misconduct in office" as did the Ohio statute.
[4] Additionally, the K-20 Education Code, Florida Statutes Chapter 1012, deals with personnel in public schools. Section 1012.33(1)(a), Florida Statutes (2005), governing contracts with instructional staff, supervisors, and school principals states:

(1)(a) Each person employed as a member of the instructional staff in any district school system shall be properly certified . . . or employed . . . and shall be entitled to and shall receive a written contract as specified in this section. All such contracts . . . shall contain provisions for dismissal during the term of the contract only for just cause. Just cause includes, but is not limited to, the following instances, as defined by rule of the State Board of Education: misconduct in office, incompetency, gross insubordination, willful neglect of duty, or conviction of a crime involving moral turpitude.
(Emphasis added.)